# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CRISTINA MARIE DIBERT, | CASE NO. 1:23-CV-01262-JG |
| Plaintiff, | JUDGE JAMES GWIN |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE CARMEN E. HENDERSON |
| Defendant, | **REPORT & RECOMMENDATION** |

## I. Introduction

Plaintiff, Cristina Marie Dibert ("Dibert" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

Claimant previously filed an application for DIB in July 2017 but was found not disabled in a written decision issued on February 5, 2020. (ECF No. 7, PageID #: 93-111). On November 5, 2020, Claimant filed another application for DIB, alleging a disability onset date of April 17, 2017. (*Id.* at PageID #: 42). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On April 15,

1

2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). At the hearing, Claimant amended the alleged onset date to February 6, 2020, the date after the previous decision. (*Id.*). On May 9, 2022, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 42-54). The ALJ's decision became final on April 28, 2023, when the Appeals Council declined further review. (*Id.* at PageID #: 28).

On June 27, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 8, 10).[1] Claimant asserts the following assignments of error:

> 1. The ALJ committed harmful error when he applied the wrong standard of review when he erroneously adopted the findings of the prior Administrative Law Judge.
>
> 2. The ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms, including pain, precluded her from engaging in substantial gainful activity on a full-time and sustained basis.
>
> 3. The ALJ erred at Steps Four and Five of the Sequential Evaluation when he found Plaintiff could perform work at the light level of exertion.

(ECF No. 8 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> At the hearing, the claimant testified she is unable to work due to her impairments. She testified that she has a driver's license and has no problems driving, other than sitting for too long, which prevents long distance driving (over one hour). She further testified that during that hour she frequently shifts due to pain radiating from her leg. She also testified that she has not worked since 2017

---

[1] While Claimant docketed a reply brief (ECF No. 11), the document filed relates to a different case and does not address the claims at issue here. Because the undersigned does not foresee any argument that would alter the recommendation, no additional time to file a corrected reply is necessary.

2

>as a tax preparer. The claimant indicated she sees a chiropractor and it helps with her pain, giving her momentary relief. She reported other physical issues, including foot problems, diabetes, and a skin condition that has left scars on her face and arms. The claimant reported having issues being out in the general public, especially when people walk up and approach her. She indicated she is constantly looking over her shoulder, and has to pick up groceries rather than go into the store. Concerning activities of daily living, the claimant testified she takes her dogs outside and washes some dishes, as well as straightens up the house, before getting back in bed and watching television. She testified that she could walk for about 20 minutes and can sit for 30 minutes on a good day, before needing to get up and move. She further testified that she has to elevate her feet when sitting. She also testified to having issues with her incontinence, but has a stimulator that has helped with bladder control. The claimant reported that her overall condition further affects her ability to squat, bend, reach, kneel, climb stairs, concentrate, and complete tasks. (Hearing testimony, Ex. B7E).

(ECF No. 7, PageID #: 49).

###### B. Relevant Medical Evidence

>The ALJ also summarized Claimant's health records and symptoms:

>Turning to the medical evidence, treatment records from April 3, 2020, note complaints of back, neck, and shoulder pain. On examination, she had milt [sic] to moderate muscle spasms, tenderness and fixation in the neck, upper back, and right shoulder. (Exs. B1F, B2F).

>A urology appointment on June 2, 2020, indicated the claimant was status post interstim implant placement in July 2018. She reported doing well at that time, denying urinary frequency, urgency, or incontinence except some minor stress induced incontinence. She was urinating well without difficulties. (Ex. B3F).

>The following month, on July 20, 2020, records noted moderate neck, upper/middle/lower back pain, moderate muscle spasm, tenderness, fixation and trigger points in these areas. Ranges of motion of the cervical, upper thoracic, lower thoracic and lumbar were moderately restricted and painful. An x-ray of her cervical spine revealed a fusion with hardware at C5-6-7. An x-ray of her lumbar spine showed mild dextroscoliosis apex L3, bone stimulator implant and lead wires. (Ex. B4F).

>Hospital records from July 27-30, 2020, note right hip, leg pain, and back pain. She complained of pain radiating down her right leg. She had normal vital signs, but had some tenderness to the lower back as well as the SI joint on the right. She had a positive straight leg raise on the right. Her labs were overall unremarkable and she had normal inflammatory markers. A CT of her lumbar spine revealed multilevel discogenic disease and facet joint arthropathy without evidence of

significant spinal canal stenosis. She was treated with steroids, muscle relaxer and a Lidoderm patch. Her elevated blood sugars improved. She tolerated physical therapy as well, which improved to the point that she was discharged home. She was to follow up with primary care and with neurosurgery in an outpatient setting as arranged. The claimant was diagnosed with intractable back pain, diabetes mellitus II, status post spinal surgery. (Ex. B5F).

A CT scan of the claimant's lumbar spine taken on August 17, 2020, revealed the following: 1. Moderate degenerative disc disease at L4-L5. There is diffuse disc bulge and a broad-based right paracentral disc protrusion. Mild facet arthropathy with ligamentum flavum thickening. There is severe spinal canal stenosis. Spinal stenosis is most severe on the right side of the spinal canal as a result of the right paracentral protrusion. Severe effacement of the right lateral recess with compression of the right L5 nerve root. Right foraminal disc protrusion and osteophyte result in severe right foraminal narrowing. 2. No significant spinal stenosis or foraminal narrowing at the remainder of the lumbar levels. (Ex. B5F).

The claimant underwent lumbar spine surgery on August 27, 2020. A follow up appointment on September 18, 2020, indicated she was doing well post-surgery. She still had tingling in her toes. Her incision was clean and healing. The claimant's Body Mass Index (BMI) at that time was 33.6, which is considered obese. I have considered the exacerbating effect of the claimant's obesity on other impairments as required by SSR 19-2p. Obesity may also cause or contribute to mental impairments. The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea. However, there is no evidence in the case record that the impact on musculoskeletal, respiratory, cardiovascular, or other body system functioning results in greater limitations than set forth in the residual functional capacity above, and the impact of obesity was considered in finding the claimant limited to a restricted range of light work activity. (Exs. B6F, B7F).

On October 27, 2020, a recent sleep study showed moderate obstructive sleep apnea with sleep related hypoxemia and periodic limb movement disorder. She was using a CPAP machine, which was helping. The overall examination was benign. The claimant reported mild recurring back pain on November 3, 2020, from her laminectomy in August 2020. She had tenderness in the lumbar spine centrally. Sciatica on the right side was further noted along with a diagnosis of diabetes mellitus, type II. (Ex. B12F).

Psychiatric records from January 29, 2020, noted overall improvement in her ability to push through pains and frustrations to meet her more basic hygiene, self-care, and housework needs. She was getting more involved in enjoyable activities in recent months. She had also increased her frequency and duration of visits into her community, with help from her husband at times. She was learning additional assertive communication strategies to help reduce tension in her interaction while out. She had a slight uptick in her mood and feelings of empowerment. She was

further maintaining her overall increase in her awareness of common triggers to shifts in mood and actively attempting to challenge her thinking errors more readily on most days. (Ex. B5F, B6F).

Follow-up psychiatric records from March 3, 2020, indicate she was managing to get through her initial grieving, but continued to think about her mother-in-law and how to deal with panic attacks. She continued to pick at her skin as well and was struggling to stop. Her appetite was not good and she reported yelling, cursing, and arguing. She reported flashbacks, nightmares, avoidance, seeing her attacker in her dreams, and shadows of her deceased relatives. She had limited insight but her judgment was intact. Her affect was somewhat anxious and dysphoric. The claimant was diagnosed with unspecified depressive disorder and panic disorder. (Exs. B5F, B6F).

The claimant underwent further psychiatric treatment on September 18, 2020. She reported insomnia, changes in interest, fatigue, and issues concentrating, but she denied crying spells. Emotional distress and restlessness was further noted. The claimant was diagnosed with major depression disorder. Her medications were refilled and adjusted accordingly at that time. (Ex. B5F, B6F).

Consultative medical examiner, Dr. James Gatton, M.D., examined the claimant on May 23, 2021. Dr. Gatton noted that a straight leg test was normal on both sides. She had tenderness to palpation of the midline lumbar spine. The claimant had 5/5 strength in the upper and lower extremities with proximal and distal muscle groups. She had reduced range of motion for lumbar forward flexion. (Ex. B8F).

The claimant continued treatment for her physical and mental health issues during the remainder of 2020, 2021, and into 2022. (Exs. B9F-B11F). The claimant also underwent continued chiropractic treatment due to complaints of increased neck, upper/lower back, and right shoulder pain. She indicated her symptoms were aggravated by daily activities such as bending, twisting, lifting, reaching overhead, sitting, standing, and walking. (Ex. B11F). Regardless, most of these records show medication adjustments and refills and improvement to baseline following surgery.

(ECF No. 7, PageID #: 49-51).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

5

2. The claimant has not engaged in substantial gainful activity since February 6, 2020, the amended alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: lumbar degenerative disc disease with laminectomy; diabetes mellitus; degenerative joint disease; obesity; depressive disorder; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can perform lifting and/or carrying 20 pounds occasionally and ten pounds frequently; standing and/or walking about six hours in an eight-hour workday; sitting about six hours in an eight-hour workday; the individual would be permitted to change positions after sitting for one hour, giving one-to-two minutes to change position while remaining on task; occasional use of hand controls with the right upper extremity; occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; occasional overhead reaching bilaterally; frequent handling and fingering; avoid concentrated exposure to vibration; avoid unprotected heights and heavy machinery; can perform one-to-four-step tasks but not at a fast production rate pace, such as assembly line work; no strict production quotas; capable of making simple, work-related decisions but would not be required to resolve conflicts or persuade others relative to work tasks; can occasionally interact with coworkers but no tandem or shared tasks; can occasionally interact with supervisors but no over-the-shoulder supervision; no interaction with the public; and can adapt to infrequent changes in the work setting where major changes are explained in advance.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 6, 2020, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 7, PageID #: 44-45, 48, 52-54).

V. Law & Analysis

  A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

  B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant

work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three issues on appeal, arguing that (1) the ALJ applied the wrong standard of review when he adopted the findings of the prior ALJ; (2) the ALJ failed to properly apply the criteria of Social Security Ruling ("SSR") 16-3p in considering her symptom testimony; and (3) the ALJ erred at steps four and five when he found that Claimant could perform work at the light level of exertion. (ECF No. 8 at 1).

**1. The ALJ did not apply the wrong standard of review in considering the prior RFC.**

Claimant first argues that "[a]lthough the ALJ failed to state whether he applied *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), he still adopted the findings of the prior ALJ," which were "contrary to the evidence in this matter which clearly established that Plaintiff's condition had worsened." (ECF No. 8 at 8). She asserts that "the ALJ erroneously failed to consider any of the new medical evidence when setting forth his opined limitations." (*Id.* at 10). Claimant argues that the ALJ's reliance on the State agency opinions was also error because these opinions also relied on the prior ALJ's findings without considering new and

8

material evidence that supported greater limitations. (*Id.* at 11).

The Commissioner responds that the "ALJ gave a 'fresh look' to Plaintiff's application, while also consideration [sic] the prior ALJ's decision, as required by Sixth Circuit authority." (ECF No. 10 at 5). The Commissioner argues that the ALJ complied with the principles set forth in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), "by not adopting the prior findings in a mechanical fashion. Instead, the ALJ determined Plaintiff's RFC by considering closely the evidence from the current period at issue, which supports the limited light RFC." (*Id.* at 6). The Commissioner takes the position that "the ALJ thoroughly analyzed the evidence and articulated the treatment updates for each of Plaintiff's impairments following the denial of her previous application" and "[s]ubstantial evidence supported the ALJ's RFC analysis as to Plaintiff's impairments." (*Id.* at 7).

In *Drummond*, the Sixth Circuit stated that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d at 842. However, in *Earley*, the Sixth Circuit clarified that *Drummond* should not be read to hold that an ALJ is *always* bound by a previous disability determination. 893 F.3d at 932. Rather, "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." *Id.* The *Earley* court noted that "[f]resh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

While the ALJ here ultimately adopted the same RFC as the prior decision, he did so only after reviewing medical records postdating the prior decision and finding that they did not

9

warrant a change from the previous decision. The ALJ provided a detailed review of the medical records and, after doing so, he observed:

> With the exception of the lumbar surgery treatment, [Claimant's] condition is consistent with the past unfavorable decision. (Ex. B1A). Due to the new 1.0 listings (previously discussed above), the Drummond/Dennard Acquiescence Rulings do not need to be discussed. Nonetheless, her condition remained generally the same; and therefore, she had the same severe impairments and residual functional capacity. She also reported improvement to baseline, if not better following surgery. (Exs. B6F, B7F). While the claimant had a temporary increase in incontinence following back surgery this improved again with stimulator replacement. Psychiatric records also note some improvement, and no more than moderate mental limitations, as discussed in the "paragraph b" section above. Regardless, there is no basis for deviation from the previous ALJ Decision. (Exs. B1A, B4F).

(ECF No. 7, PageID #: 49-51). This discussion shows that, despite not citing *Earley*, the ALJ complied with its requirement that he give a "fresh look to a new application containing new evidence" before ultimately concluding that such new evidence supported adopting the same RFC. *Earley*, 894 F.3d at 931. Substantial evidence supports the ALJ's decision. To the extent Claimant argues a different conclusion could be reached, the Court must defer to the ALJ's decision "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

**2. The ALJ properly applied SSR 16-3p in considering Claimant's symptoms.**

Claimant's second argument challenges the ALJ's treatment of her symptom testimony. Claimant argues that the ALJ concluded her statements "were inconsistent and were not supported by the medical evidence" given that "with the exception of her lumbar surgery, her condition was consistent with the prior ALJ denial" but "this finding was in error as the evidence clearly revealed that Plaintiff's physical and psychiatric conditions had worsened since the prior ALJ determination." (ECF No. 8 at 14). Claimant asserts that "[e]ven though the medical records

10

supported [her] complaints regarding her limitations, the ALJ failed to account for [her] pain related to her continuing back and shoulder problems." (*Id.* at 15).

The Commissioner responds that "[s]ubstantial evidence supports the ALJ's determination that Plaintiff's symptoms were not entirely consistent with the record." (ECF No. 10 at 8). The Commissioner argues that the ALJ considered the relevant factors, including Claimant's "favorable response to different treatments," "self-reported activities," and "reports of activities that aggravated her symptoms." (*Id* at 9). The Commissioner argues that Claimant "merely summarizes her testimony and evidence she claims could support her testimony, which is an invitation for this Court to reweigh the evidence." (*Id.*).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant

evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, after summarizing the record evidence, the ALJ found that Claimant's "statements about the intensity, persistence, and limiting effect of his or her symptoms" were "inconsistent because they were not supported by the medical evidence of record, which shows less limitations." (ECF No. 7, PageID #: 51). The ALJ noted that Claimant "reported improvement to baseline, if not better following surgery." (*Id.*; *see id.* at PageID #: 613 (Claimant's report that she was doing well following surgery); *id.* at PageID #: 744 (indicating that "back and leg pain have improved considerably" after surgery)). He also noted that "[p]sychiatric records also note

12

some improvement" and found no more than moderate mental limitations based largely on Claimant's own testimony given that there was "little in the record concerning mental health treatment." (*Id.* at PageID #: 47, 51).

The ALJ's discussion shows that he considered the relevant factors under SSR 16-3p, including the medical evidence, Claimant's response to treatment and intensity of pain, and her own reports of her activities. Considering the record as a whole, the Court is satisfied that the ALJ considered the relevant evidence in accordance with SSR 16-3p and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. Thus, there exists no compelling reason for the Court to disturb that finding. *Cross*, 373 F. Supp. 2d at 732.

### 3. The ALJ did not err at steps four and five of the sequential evaluation.

In her final argument, Claimant asserts that the ALJ erred at steps four and five by concluding that she could perform light work when, "[b]ased on the combination of Plaintiff's problems, she was limited to standing/walking less than the requisite 6 hours as stated for work at the light level of exertion along with limitations using her upper extremities." (ECF No. 8 at 18-19). Claimant argues that the vocational expert testified there would be no jobs for an individual "limited to occasional reaching, with no overhead reaching, and frequent handling and fingering" and this "hypothetical question was extremely similar to the RFC in this matter" such that she should have been found disabled. (*Id.* at 19).

The Commissioner responds that Claimant's argument "relies on having identified error in the RFC, which Plaintiff has not done." (ECF No. 10 at 10). The Commissioner argues that the hypothetical to which the vocational expert responded there would be no work "was not the same as the RFC (compare Tr. 55 with Tr. 21), and therefore has no effect on the ALJ's determination that Plaintiff was not disabled." (*Id.* (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F.

App'x 719, 730 (6th Cir. 2013)).

As discussed above, the ALJ considered the relevant medical evidence before adopting the RFC of the prior decision and substantial evidence supports the ALJ's conclusion. Claimant's argument that she cannot perform light work seems to be a request that the Court reweigh the evidence, but it is not the role of this Court "to reconsider the facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). To the extent Claimant relies on the vocational expert's testimony to show that the ALJ erred in concluding she could perform work in the national economy, as the Commissioner argues, the hypotheticals to which the vocational expert testified no jobs would exist included limitations for "occasional reaching, with no overhead reaching; and frequent handling and fingering," or being able to elevate legs to hip height as needed. (ECF No. 7, PageID #: 82). But the ALJ did not include these limitations in the ultimate RFC, which limited Claimant to "occasional overhead reaching bilaterally" rather than *no* overhead reaching and did not include a requirement for elevating her legs. (*Id.* at PageID #: 48).

Ultimately, the ALJ crafted an RFC which was supported by substantial evidence and the vocational expert testified that work existed in the national economy for an individual with those limitations. Accordingly, there was no error at steps four or five of the sequential evaluation and the ALJ's decision should be affirmed.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: March 1, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).